**Opinion filed November 15, 2017**



In The

# Eleventh Court of Appeals

———————

## No. 11-17-00137-CV

———————

## IN THE INTEREST OF T.A.C.G., T.M.G. III, N.L.G., T.M.G., AND A.M.G., CHILDREN

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 51219**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the parents of T.A.C.G., T.M.G. III, N.L.G., T.M.G., and A.M.G. The father appealed, and he presents two issues for our review. In the first issue, Appellant challenges the sufficiency of the evidence to support the trial court's best interest finding, and in the second issue, he complains of the admission of several photographs into evidence. We affirm.

I. *Termination: Best Interest*

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights was in the best interest of his children. Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b). In this case, the trial court found that Appellant committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O). Appellant does not challenge these findings, but he does challenge the trial court's finding that termination is in the children's best interest. *See id.* § 161.001(b)(2). Accordingly, we will uphold the order of termination if the evidence is sufficient to support the best interest finding.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not

limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department originally became involved in this case when it received a priority one intake from the police based upon the children's involvement in a serious domestic violence situation, which resulted in the mother being taken to the hospital and the father receiving staples and stitches. One of the children reported that the parents "fight like this a lot."

The mother acknowledged at trial that Appellant had a drinking problem and that there was domestic violence in the home. Appellant also admitted that he and the children's mother had a history of domestic violence. According to Appellant, the children were removed after an incident of domestic violence in which Appellant was a victim.

Although Appellant did not complete the services required of him in the family service plan, he testified that he was "doing better" and that he wanted to be reunited with his children. He also testified, however, that he planned to live in Lenorah with his girlfriend and provide a house for the children and their mother to live in in Stanton. Appellant did not know the ages of his three youngest children.

3

The investigator for the Department testified about the unsanitary conditions of the home at the time of the removal; the home was a safety hazard and a health risk to the children. Domestic violence, alcohol abuse, the continued use of alcohol, and the failure to complete the service plan—which was designed to help Appellant with the problems that led to the removal—led the conservatorship caseworker to conclude that Appellant was not able to provide a safe and stable home for his children. The caseworker testified that the parents had endangered the children and had inflicted emotional damage on them.

The caseworker testified that the children were placed in foster homes at the time of trial. Although three of the children were placed in one home and two in another home, the children had been able to have contact with each other. The caseworker testified that the children were happy and safe in their placements and that the placements were meeting the children's physical and emotional needs. She explained that one of the current placements was interested in taking all five children if they were to become available for adoption. The caseworker believed that permanency in the home of that placement was best for the children. According to the caseworker, the oldest child does not wish to be returned to the parents; the caseworker did not ask the younger children about their desires to return to their parents' care. The caseworker testified that termination of both parents' parental rights would be in the best interest of the children, and the children's attorney ad litem asked that the children not be returned to the parents.

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. The trial court could reasonably have formed a firm belief or conviction that it would be in each child's best interest for Appellant's parental rights to be terminated. We hold that the evidence is both

4

legally and factually sufficient to support the trial court's best interest finding. We overrule Appellant's first issue.

## II. *Admission of Photographs into Evidence*

In his second issue, Appellant argues that the trial court abused its discretion when it admitted ten photographs into evidence. Eight of the photographs depicted the condition of Appellant's home at the time of removal, and two depicted the injuries sustained by Appellant on that date. When the photographs were offered into evidence, Appellant took the sponsoring witness on voir dire and then objected that he had not been provided with those photographs in a timely manner prior to trial as required by the trial court's scheduling order. The trial court overruled Appellant's objection without a showing by the Department or a finding by the trial court of good cause, lack of unfair surprise, or lack of unfair prejudice. *See* TEX. R. CIV. P. 193.6.

Assuming that, without such a showing or finding, the admission of the photographs was an abuse of discretion, we conclude that any error in the admission of the photographs was not reversible error. *See* TEX. R. APP. P. 44.1(a). Prior to the admission of the photographs, Appellant had testified about the incident that resulted in the removal of his children. He testified that he woke up with blood on his head and stabs on his arms and that he "end[ed] up getting eleven staples and five stitches in [his] head." The two photographs of Appellant were cumulative of Appellant's own testimony. The other eight photographs merely depicted the conditions of the house as testified to by the investigator and, thus, were cumulative of her testimony. Under the record in this case, we cannot conclude that the admission of the photographs into evidence probably caused the rendition of an improper judgment or prevented Appellant from properly presenting the case to this court. *See id.*; *see also State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 881 (Tex.

2008); *In re M.H.*, 319 S.W.3d 137, 149–50 (Tex. App.—Waco 2010, no pet.). Because we conclude that the admission of the photographs does not constitute reversible error, we overrule Appellant's second issue.

III. *This Court's Ruling*

We affirm the trial court's order of termination.

MIKE WILLSON

JUSTICE

November 15, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.